# In the United States District Court
# for the District of Utah, Central Division

FILED
U.S. DISTRICT COURT

2006 OCT 16  P 2: 03

DISTRICT OF UTAH

BY: _____
        DEPUTY CLERK

|  |  |
|---|---|
| MICHAEL ANTHONY MARTIN, | Case No: 1:04 CV 181 JTG |
| Plaintiffs, | |
| vs. | **MEMORANDUM DECISION** |
| JOANNE B. BARNHART, Commissioner, Social Security Administration, | **and ORDER** |
| Defendants. | |

This matter is before the Court on Plaintiff's Complaint filed in response to the denial of Plaintiff's request for Social Security benefits by both the Administrative Law Judge ("ALJ") and the Social Security Administration's Appeals Council. Plaintiff filed a Memorandum Brief, the Commissioner an Answer Brief, and Plaintiff a Reply Brief. The case was argued before the Court on October 11, 2006. Plaintiff Martin was represented by John Borsos and the Defendant Barnhart, Commissioner of the Social Security Administration, was represented by Teresa Abbott.

At issue is whether it was proper for the ALJ to disregard the opinions and reports of a nurse practitioner during his analysis of Plaintiff's Residual Functional Capacity ("RFC"). A second issue is whether, in making his credibility determination, the ALJ wrongly disregarded Plaintiff's allegations of pain. The final issue presented is whether the ALJ failed to match Plaintiff's RFC with jobs identified by the Vocational Expert.

The Court has reviewed the entire record and determines that, although the ALJ

improperly disregarded Nurse Practitioner Virginia Mol's opinion, this constituted harmless error in light of other substantial evidence supporting the ALJ's Decision. The Court also determines that the ALJ did not commit error concerning his rejection of Plaintiff's allegations of pain, and that there was no error in the ALJ's consideration of the vocational expert's opinion in his determination of the RFC. Therefore, the ALJ's decision is affirmed.

## I. PROCEDURAL HISTORY

Plaintiff, Michael A. Martin, filed an application for Disability Insurance Benefits (Title II Social Security Benefits) on August 29, 2002, alleging an onset date of March 15, 2001. The application was denied on December 9, 2002, and Plaintiff's request for reconsideration was also denied. Plaintiff then filed a request for hearing by an ALJ, which was granted. Plaintiff and John F. Hurst, M.S., C.R.C., a vocational expert, appeared and testified at the hearing. The ALJ denied Plaintiff's claims in a decision dated June 21, 2004. Plaintiff then appealed to the Appeals Council, which was denied.

Plaintiff filed the pending complaint in the United States District Court for the District of Utah, pursuant to 42 U.S.C. § 405(g) (2000). He urges the Court either to enter judgment, entitling him to receive benefits for his period of disability since his alleged onset date, or to remand the case to the Commissioner for consideration of additional evidence. The Court has reviewed the entire record and filings by both parties, including oral argument

## II. FACTUAL BACKGROUND

At the time of the ALJ's decision, Plaintiff was a forty-eight year old man with a high school education. He previously has worked as a painter, factory laborer, sandblaster, and dishwasher. Plaintiff alleges that he became disabled on March 15, 2001 due to degradation of a

2

back defect he has had since birth, including degenerative disc disease, a pinched nerve, and

scoliosis.

### III. THE ALJ'S DECISION

The Social Security Administration ("SSA") uses a five step process to determine

whether a plaintiff is disabled under Title II of the Social Security Act. 20 C.F.R. §

404.1520(a)(4) (2006):

1. If the claimant is performing substantial gainful work she is not disabled.

2. If the claimant is not performing substantial gainful work, her impairment(s) must be severe before she can be found to be disabled.

3. If claimant is not performing substantial gainful work and has a severe impairment(s) that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment(s) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, 20 C.F.R. § 404, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairment(s) does not prevent her from doing her past relevant work, she is not disabled.

5. Even if the claimant's impairment(s) prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

Steps one through three are not at issue.  At step one, the ALJ found that the

plaintiff had not engaged in any substantial gainful activity subsequent to the alleged date of

onset.  The ALJ gave Plaintiff the "benefit of the doubt" in step two, finding that the objective

medical evidence barely indicated he had medically determinable, severe impairments including

degenerative disc disease, gastroesophageal reflux disease, and hypertension.  (R. at 14.)  In step

three, the ALJ found that Plaintiff's severe impairments did not meet or equal any of the

impairments listed in Appendix 1 to Subpart P of 20 C.F.R. § 404.

At step four, the Plaintiff's RFC was assessed based on all the relevant medical and other evidence in the case record. The ALJ looked at the opinions of Dr. Christopher F. Penka and Dr. Tray O'Neal, concluding that neither doctors' opinions or exams indicated that Plaintiff had a significant impairment that would be disabling. During the RFC analysis, the ALJ stated that the opinions of Virginia Mol, a nurse practitioner, had been disregarded in reaching his conclusion.

After assessing the evidence, the ALJ determined that Plaintiff retains the RFC to perform the exertional demands of sedentary work. The ALJ did not "discount all of the plaintiff's complaints," but held that the "description of his limitations was not fully credible or consistent with the record" and that Plaintiff's "daily activities are consistent with the performance of sedentary work." (R. at 18.) The ALJ pointed to Plaintiff's testimony that "he can only sit for an hour, yet he admitted he goes to a movie three times a month" *Id.* The ALJ stated that "[m]ovies typically last about two hours," twice as long as Plaintiff claimed he could sit, and also that Plaintiff "admitted to performing most common activities of daily living and to riding a bicycle." *Id.*

Despite his skepticism, the ALJ determined in step four that in light of his RFC, Plaintiff could not perform any of his past relevant work because it was too exertional for him. Even so, relying on the RFC analysis, the ALJ concluded that Plaintiff has the capacity to perform a wide range of sedentary work activities. In this regard, a vocational expert testified with regard to Plaintiff's ability to perform other work that exists in the national economy. The vocational expert determined that, given Plaintiff's specific work restrictions, he was capable of working at several unskilled sedentary jobs. Accordingly, the ALJ held in step five that Plaintiff

was not disabled.

## IV. ISSUES

Plaintiff presented three main arguments on appeal:

1.      Whether the ALJ's decision to disregard the nurse practitioner's records and opinions was error?

2.      Whether the ALJ wrongly disregarded Plaintiff's allegations of pain in making his credibility determination?

3.      Whether the ALJ properly considered the opinion of the vocational expert in determining Plaintiff's RFC?

## V. STANDARD OF REVIEW

The Court's review of the Decision is limited to determining whether the "factual findings are supported by substantial evidence in the record viewed as a whole" and whether the correct legal standards were applied. *Castellano v. Secretary of Health & Human Services*, 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *Threet v. Barnhart*, 353 F.3d 1185, 1189 (10th Cir.2003) (quotations and citation omitted). The Court may consider the specific rules of law that the ALJ must follow in "'weighing particular types of evidence,' but [the Court] will not reweigh the evidence or substitute our judgment for the Commissioner's." *Joyce v. Barnhart*, 2004 WL 214478 (10th Cir. 2004) (citing *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988) and *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000)).

## VI. ANALYSIS

**1.   THE OPINIONS AND RECORDS OF NURSE PRACTITIONERS**

    <u>A.</u>    <u>The ALJ Committed Error in Disregarding the Opinions and Records of Nurse Practitioner Mol.</u>

Plaintiff asserts that it was error for the ALJ to reject the nurse practitioner's records. He argues that the ALJ must consider all medical sources, specifically including nurse practitioners . . . in determining the severity and functional concomitants of [the] medically-determinable impairment. *See* 20 C.F.R. § 404.1545(e) ("In assessing the total limiting effects of your impairment(s) and any related symptoms, we will consider *all* of the *medical* and *nonmedical* evidence.") (emphasis added).

The Code of Federal Regulations mandates consideration of "all medical and nonmedical evidence" in connection wit the RFC analysis. 20 C.F.R. § 404.1545(e). Further, the Tenth Circuit has found it "well settled that administrative agencies must give reasons for their decisions." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (citations omitted). The Social Security administration has recently clarified its regulation on how to consider opinions and other evidence from sources who are not "acceptable medical sources." SSR 06-03P, 2006 WL 2329939 (S.S.A.). First, the regulation notes that information from "other sources" cannot establish the existence of a medically determinable impairment, but the information "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.* at 3. The regulation goes on to note that:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions handled primarily by physicians and psychologists.

6

> Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other evidence in the file.

*Id.* at 4. Further, the regulation states that opinions from non-medical sources who have seen the individual in their professional capacity should be evaluated by using the applicable factors, including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion. *Id.* at 5-6. Finally, the regulation notes that:

> [a]lthough there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions for these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Id.* at 7.

In a case before Utah's Chief Magistrate Judge Samuel Alba, an opinion by the same nurse practitioner, Virginia Mol, was under dispute. *Saucedo v. Barnhart*, No. 2:03-CV-625 SA, 2004 WL 2303451, at *5 (D. Utah 2004). The plaintiff alleged error because the ALJ had not given Ms. Mol's opinion the same controlling weight he had given to the opinions of plaintiff's treating physicians. The court determined that no error existed, holding that the ALJ had given Nurse Mol's opinions the proper amount of deference under the law: "[t]he ALJ did not discount or discredit Ms. Mol's opinions merely because she [was] a nurse practitioner . . . [but instead] carefully and accurately summarized Ms. Mol's findings and opinions in his analysis." *Id.*

By contrast, the ALJ in this case did not proceed by carefully and accurately

7

summarizing Ms. Mol's findings. The ALJ stated that the opinions of Ms. Mol had "been disregarded in reaching a conclusion [because] a nurse is not an acceptable medical source for diagnosis." (R. at 17.) He continued to state that "[a] nurse's opinion or findings may help the Administration understand how an impairment affects a plaintiff's ability to work, but it is not medical evidence from an acceptable medical source." *Id.* (referencing 20 C.F.R. § 404.1513). We agree with the government that the ALJ's above statement indicates some consideration of Nurse Mol's opinion. However, the ALJ's decision seems devoid of any degree of *specific consideration* of the nurse's functional assessments. The ALJ did note Nurse Practitioner Mol's January 6, 2002 evaluation, which "plac[ed] some restrictions on [Plaintiff's] ability to perform exertional activity," but then in the very next sentence states that her opinion has been "*disregarded* in reaching a conclusion." *Id.* Following the SSR 06-03P regulation, the ALJ should have discussed factors relating to the Nurse Practitioner's opinion or, at the least, should have discussed Nurse Mol's evidence so that the Court could have followed the ALJ's reasoning. Thus, the Court determines that it was error for the ALJ to disregard the nurse practitioner's opinion without first discussing the evidence he was rejecting.

      B.    <u>Given the overwhelming evidence supporting the ALJ's decision, the ALJ's disregard of Ms. Mol's "other source" evidence constitutes harmless error.</u>

      The ALJ's decision is reviewed by this Court, to "determine whether it is supported by substantial evidence and whether the [ALJ] applied the correct legal standards." *Washington v. Shalala*, 37 F.3d at 1439. The principle of "harmless error" has been specifically applied to social security disability cases. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). The Tenth Circuit has held "certain technical errors" to be minor enough so as "not to undermine confidence in the determination of th[e] case." *Id.* (citations omitted). The *Allen* court held that it may be harmless error "where, based on material the ALJ did at least consider

8

(just not properly), we could confidently say that *no* reasonable administrative factfinder,
following the correct analysis, could have resolved the factual matter in any other way." *Id.*

   In this case, this Court finds that no reasonable administrative factfinder would
have resolved the matter differently.  First, the ALJ looked at the letter from Dr. Christopher
Penka, a neurologist, who examined Plaintiff in regards to his claim of lower back pain.  The
ALJ discussed in detail the tests Dr. Penka performed on Plaintiff and the negative results from
a majority of those tests.  Furthermore, Dr. Penka noted that "the patient was able to heel, toe
and tandem gait walk, raise up from squat position and carry out range of motion of the
lumbosacral articulation with some left-sided back pain."  Dr. Penka determined that Plaintiff
was not a candidate for neurosurgical intervention and that a course of conservative treatment
was recommended.  Accordingly, the ALJ reviewed this evidence and determined that "the
objective medical and neurological evidence clearly shows a lack of any significant impairment
that would be disabling."

   Additionally, the ALJ looked at the examination performed by Dr. O'Neal at the
request of the Disability office.  Dr. O'Neal confirmed the findings of Dr. Penka.  Furthermore,
Dr. O'Neal concluded that:

> It appears that Michael has a long history of back pain, however I am a bit
> perplexed based on my exam today.  He has normal range of motion, no
> tenderness to palpation, straight leg raises and normal strength.  Radiographs
> might be helpful to document any underlying pathology that is not apparent on
> exam today.  He reports that he can sit 1 hour, stand 15 minutes, walk 2 blocks
> and lift only 7 lbs repetitively.  All of these appear to be gross underestimates of
> his functional abilities based on my exam today

(R. at 271).  Finally, Plaintiff was also seen by a DDS physician who determined that Plaintiff

could lift up to 10 pounds frequently and could stand or walk for about 6 hours in an 8-hour workday. The DDS physician thought that the claimant's allegations that he couldn't work were inconsistent with his ability to do a number of activities around the home, including Plaintiff's admittance that he "cooks, shops, does dishes, wipes the counter, takes care of personal needs, goes to movies about 3 times a month, rents movies at least one a month, watches TV, goes bike riding during the summer once or twice a week, visits with family and neighbors . . ." (R. at 173). Based upon all of this evidence, along with "x-rays and MRI scans," the ALJ determined that "there is no objective evidence to support claimant's degree of pain and alleged loss of range of motion in his spine." (R. at 16.).

Upon review of the entire record, this Court finds that the ALJ's Decision was and is supported by substantial evidence, and no reasonable factfinder would have found differently. Over a period of approximately one year and eight months, Nurse Practitioner Mol met with Plaintiff four times. Nurse Practitioner Mol's original conclusion was that Plaintiff had degenerative disc disease, but that Plaintiff needed an MRI to confirm this. She stated that Plaintiff's condition was long term and "it is unlikely that Michael will be able to do any type of strenuous job in the future." (R. at 138). A later report by Nurse Mol states that Plaintiff should not do heavy lifting and should have limited bending, squatting, stooping, and no prolonged standing or sitting. Based on those restrictions, Nurse Mol stated that Plaintiff was unable to return to work. It is apparent that the ALJ considered the opinion and statement of the nurse practitioner, but discounted it because of overwhelming medical evidence to the contrary.

The Court considers that this is a case of harmless error. As noted above, nurse practitioner's opinions and records do not constitute an "acceptable medical source," and are therefore entitled to less weight than a physicians. *See id.* 20 U.S.C. §§ 404.1513(a),(d).

Moreover, the opinions of Nurse Mol simply place restrictions on Plaintiff's ability to do heavy lifting or perform strenuous jobs, a finding that the ALJ agreed with. Nurse Mol was not asked and presented no evidence that Plaintiff was unable to perform a range of sedentary work activity. Nurse Mol's recommendation that Plaintiff not return to work may have been a recommendation that Plaintiff could not perform his *past* relevant work, which was more strenuous. Ultimately, this Court finds that the evidence, including Nurse Mol's opinion, is consistent with the ALJ's decision that Plaintiff could perform a range of sedentary work activities. The lack of specific discussion of Mol's opinions cannot be said to undermine confidence in the ALJ's overall opinion, which was supported by substantial evidence. Applying more weight to Plaintiff's treating physicians, noting that the overall consensus was that Plaintiff was not disabled and could work, and finding that Nurse Mol's conclusion was not directly contrary to the ALJ's findings, this Court considers that another factfinder would not have decided this issue differently. Accordingly, the Court concludes that this was harmless error and the Decision should be affirmed.

## 2.    THE ALJ DID NOT WRONGLY DISREGARD PLAINTIFF'S ALLEGATIONS OF PAIN IN MAKING HIS CREDIBILITY DETERMINATION.

Plaintiff argues that the ALJ improperly determined that Plaintiff's allegations of disabling pain were not credible. "A claimant's subjective allegation of pain is not sufficient in itself to establish disability." *Barnum v. Barnhart*, 385 F.3d 1268, 1273 (10th Cir.2004) (quotations and citation omitted). "Instead, before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain." *Id*. The framework for analyzing claims of disabling pain was set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir.1987). First, the Court must consider:

11

(1) whether Claimant established a pain-producing impairment by objective
medical evidence;
(2) if so, whether there is a "loose nexus" between the proven impairment and the
Claimant's subjective allegations of pain; and
(3) if so, whether, considering all the evidence, both objective and subjective,
Claimant's pain is in fact disabling.

*Barnhum*, 835 F.3d at 1273.  Moreover, to determine the credibility of pain testimony, the ALJ

can look at a number of factors, including:

the levels of medication and their effectiveness, the extensiveness of the attempts
to obtain relief, the frequency of medical contacts, the nature of daily activities,
subjective measures of credibility that are peculiarly within the judgment of the
ALJ, the motivation of and relationship between the claimant and other witnesses,
and the consistency or compatibility of nonmedical testimony with objective
medical evidence.

*Id.* (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir.1991)).  Regardless, it is difficult,

for a claimant to establish disabling pain "without the explicit confirmation of treating

physicians."  *Kepler v. Chater*, 68 F.3d 387, 390 (10th Cir.1995)(citations omitted).

Plaintiff's argument that the ALJ did not use the proper analysis to determine

disabling pain is completely erroneous where the ALJ, in fact, identified the *Luna* test and

discussed it in detail. (R. at 18.).  The ALJ determined that there was no objective evidence to

support claimant's degree of pain under step one.  Thus, because the ALJ found that no pain

producing impairment had been established, he was entitled to end his analysis there and the

Luna standard was satisfied.  Regardless, the ALJ went on to discuss Plaintiff's subjective

allegations of pain to bolster his opinion that Plaintiff did not have a pain inflicting disability.

The ALJ went through a detailed discussion of Plaintiff's daily activities and his ability to do a

multitude of chores and even go bicycling twice a week during the summer.  He discussed

Plaintiff's testimony at the hearing, and looked at the medicines Plaintiff had been using to treat

his condition.  The ALJ determined that "the claimant's description of his limitations are not

12

fully credible or consistent with the record." The ALJ supported his conclusion with the

statements of Plaintiff's treating physicians along with the State Agency physicians who

examined him. We find no error in the ALJ's determination that Plaintiff was not credible[1] and

that there was no objective evidence that Plaintiff had a pain producing impairment.

3.     **THERE IS NO CONFLICT BETWEEN THE VOCATIONAL EXPERT'S
       TESTIMONY AND THE ALJ'S RFC FINDING.**

        Plaintiff's final argument is that the ALJ failed to match Plaintiff's RFC to the jobs

identified by the VE. During the RFC analysis, the ALJ determined that Plaintiff was not

capable of performing the full range of sedentary work, and that limitations would apply. To be

considered capable of performing the full range of sedentary work, a claimant "must be able to

remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning

break, a lunch period, and an afternoon break at approximately 2-hour intervals." SSR 96-9p.

Given that Plaintiff could only perform sedentary work with the added limitation that he would

need to alternate sitting and standing or walking, at the hearing the ALJ gave the VE the

following hypothetical:

> Because of back and knee limitations he would be limited to no more than
> sedentary work and he would need to alternate sitting with standing and walking.
> And the maximum sitting at, sitting at one time would be one hour. And for this
> hypothetical we would assume a total of six hours during the day. Standing and
> walking would be about two hours total during the day. And those would be
> performed at, let's see, standing at one time would be 15 minutes and walking at
> one time would be 30 minutes. . . the individual, would miss up to but nor more
> than 24 days of work, work days per year. And also the individual would be part
> of the morning and afternoon breaks at scheduled and part of the lunch period.

(R. at 51-2). The VE testified that there were jobs with the limitations described above

_____

        [1]We note that "credibility determinations are peculiarly the province of the finder of fact,
and we will not upset such determinations when supported by substantial evidence." *Kepler v.
Chater*, 68 F.3d 387, 391 (10th Cir.1995)(citations omitted).

including a touch-up screener, a semiconductor bonder, and a surveillance system monitor. The VE testified that these were all sedentary and unskilled jobs that existed in the national economy. Plaintiff argues that the ALJ should have elicited more testimony from the VE regarding "erosion of the available jobs based on the requirement for a sit/stand restriction." Having reviewed the question, this Court finds that the ALJ did specifically place a sit/stand limitation into the hypothetical and there is no conflict between the VE's statement and the requirements of sedentary work defined by the ALJ.

Further, Plaintiff argues that the ALJ did not ask the VE whether his testimony deviated from the United States Department of Labor, Employment and Training Administration (DOT) database service. Defendant has conceded this point, but argues that it was harmless error in this case where a review of the DOT shows that all three of the jobs were sedentary work that fall within Plaintiff's RFC. We agree. This argument appears to be splitting-hairs, and it is clear that there is no conflict between the VE's testimony and the DOT.

Finally, Plaintiff argues that he cannot perform the jobs listed by the VE because he is dyslexic. This Court finds Plaintiff's argument to be unpersuasive. The ALJ determined that Plaintiff was able to do unskilled work, defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time," 20 C.F.R. § 404.1568(a) and the VE provided three jobs that met the requirements of unskilled work. We note that Plaintiff graduated from high school and performed several semi-skilled and skilled jobs in the past that required a higher degree of analysis and reasoning than his current job level. It is clear, from the record, that Plaintiff is able to do unskilled work despite his dyslexia and the Court finds no error on this point.

## VII. CONCLUSION

The ALJ's failure to specifically discuss the findings of Nurse Mol is harmless error given the amount of substantial evidence favoring the ALJ's finding that Plaintiff is not disabled. Further, this Court finds that the ALJ properly discounted Plaintiff's allegations of disabling pain. Finally, the ALJ reasonably relied on the testimony of a vocational expert based on an appropriate hypothetical question. Accordingly the Court finds that the ALJ met his burden of establishing that Plaintiff could perform a range of unskilled, sedentary work.

Based upon the foregoing, it is hereby

ORDERED, that the ALJ's Decision is AFFIRMED and the case is DISMISSED.

DATED this 13th day of October, 2006.

J. THOMAS GREENE
UNITED STATES DISTRICT JUDGE